Good morning, Your Honor. My name is Tim Kasperick. I represent Dr. Herman Pang. I'd like to reserve five minutes for rebuttal. I understand that I have 15 minutes. That's your total time. Yes. Thank you, Your Honor. Dr. Herman Pang is entitled to recover attorney's fees in this case under Arizona Revised Statute 12-340-101 because he's the prevailing party in a contested action arising out of contract. There's no question that the underlying action arose out of an insurance agreement. Dr. Pang prevailed because medical protectives sued to reduce his coverage limits, and he obtained a dismissal with prejudice of medical protectives' suit without a reduction of those limits. But isn't prevailing party a standard in federal law as opposed to state law? Actually, the successful party and prevailing party, successful party in Arizona is very similar to prevailing party. The difference is in Arizona, a successful party can be somebody who obtains a dismissal without prejudice. In federal law, the dismissal has to be with prejudice in this circuit for that party to be prevailing. So whether this would be determined under Arizona law or federal law, it's our position that he's the prevailing party because this was a dismissal with prejudice. In other words, when medical protective failed to reopen the case, the initial dismissal was without prejudice, and that was pursuant to a settlement. And pursuant to that settlement, Dr. Pang was to receive $135,000. However, in the order of dismissal, the parties kept jurisdiction with the trial court so that if the case was reopened, that the parties would be placed in the original position they were in when the dismissal took place. When the Court of Appeals in Arizona reversed the verdict in favor of Judge Dr. Pang, medical protective failed to reopen the case within the 30-day time limit when the mandate came down, and that converted the dismissal to a dismissal with prejudice. And I think the authority in this circuit is unanimous. It's undisputed, I think, in this circuit that a dismissal with prejudice is an adjudication on the merits and grants prevailing party status. Counsel, I'd like you to just walk me through. What is it that Dr. Pang got out of this settlement? And then I want you to tell me what medical protective got out of this settlement. Dr. Pang, the only thing that occurred as a result of that original order is that the case was dismissed with prejudice so Dr. Pang was able to keep his original coverage limits. They sued to reduce his coverage limits from 5 million down to 1 million. And does that mean that they're also continuing to defend him in the suit that's still going on in Arizona courts? That's correct, until it was ultimately settled. The suit was settled after this case came back. The case was ultimately settled within his $1 million uncontested policy limits. Medical protective did not contest that he had coverage up to $1 million. They were contesting that he had coverage up to 5 million. So just sort of happenstance in that matter, it was settled within the original undisputed policy limits. That's correct. But he now has the $5 million policy limits? That's correct. And then he lost the $135,000, which is why I'm saying that the trial court's analysis that this was a settlement is flawed because the settlement was contingent upon everything staying the same, that the verdict in favor of Dr. Pang would remain on appeal. What did the $135,000 represent? The $135,000 frankly represented a settlement. It's my position based on the e-mails that are in the record that it was in a fair approximation of Dr. Pang's attorney's fees. That's what we were trying to recover. There was a counterclaim for bad faith, but that counterclaim for bad faith was a compulsory counterclaim that we had to make because of medical protective because of bad faith conduct that they had in investigating the coverage action. Okay. So but that's what medical protective gets out of this. They get a counterclaim dismissed. Well, no. The counterclaim wasn't dismissed. What happened was is that when we didn't reopen the case, the counterclaim failed obviously. Right. So what medical protective got out of these negotiations is when you failed to reopen is the counterclaim against them went away. That's correct. Okay. Do they have rights to then under Arizona law to claim that they were successful on their counterclaim in defending the counterclaim? I think yes. I mean, they You think that's something the district court ought to take into account when he looks at the Arizona statute and decides who is the successful party here, is that there was a claim at a counterclaim and that both of those claims were settled and dismissed? He can take they can take that into account, but we have a totality of circumstances. There's a, in fact, the APALE medical protective cited a case called, I think, it's a farmer's insurance case dealing with the totality of circumstances. Counsel, I'm a little puzzled that you think that the Federal standard and the State standard are the same, because I thought the Arizona cases were. They're not. Well, you told me just a minute ago that you thought successful and prevailing were the same thing. The difference, successful and prevailing, successful and prevailing are used interchangeably in Arizona. The difference is, in Arizona, that a dismissal without prejudice can be, can be an adjudication on the merits and can result in prevailing party status. In Federal court, in this, in Federal jurisdiction and in this circuit, it cannot. It has nothing to do with this case because this was not dismissed without prejudice. Pardon me? That difference has nothing to do with this case because this case wasn't dismissed without prejudice. No. This case was originally dismissed without prejudice. Then by effect of the order, it was dismissed with prejudice. Right. That's the final judgment. Pardon me? That was the final judgment. That was the final judgment. That's correct. But this is Judge Teelborg's thinking, and, you know, lots of things happen afterward, but it's, I don't know if he can say it's the direct result of the settlement, but the settlement itself, according to Judge Teelborg, is that each party voluntarily agreed to a settlement that provided a mechanism for dismissing all claims with prejudice. Such a result does not produce a successful party. What Judge Teelborg fails to say in his order, right? That's correct. But what he failed to take into account was, was two things. One is that this circuit's rule that was established in the Berryhouse case, which, Your Honor, was the authoring judge on, which said that a settlement agreement that's enforceable satisfies the Buchanan satisfaction. Well, that may be true, but you've got to look at the substance of the settlement. And according to Judge Teelborg, the settlement is that both sides dismissed their claims with prejudice. That means you didn't get any more out of it than the insurance company. No. Under the totality of the circumstances, Your Honor, this was, this case was brought by Medical Protective to attack my client's coverage limits. Right. We didn't bring this case for a common claim. So they brought that claim and agreed to dismiss it with prejudice. All right. That's it. That's what, that's what. Well, they didn't agree to agree to dismiss. Here's what happened. I don't care what happened later. I'm talking about, you know, what you agreed to do. They agreed that if they didn't reopen it, it would, it would be dismissed with prejudice. Right. All right. So it was dismissed with prejudice. Now, but you also agreed to dismiss the common claim with prejudice. That's correct. But the common claim was an afterthought. It was a, it was a compulsory common claim that we had to bring. It doesn't matter whether it's an afterthought or not. I don't think the case law says, you know, cases don't apply to afterthoughts. It just, it's a claim that you dismiss. Did you not take your claim seriously? Of course we took the claim seriously. So you both dismissed your claims. Now, how does one side become a prevailing party or a successful party in that situation? Because of the totality of circumstances. Which is? In this case, that a $5 million coverage limit, maintaining a $5 million coverage limit, in an underlying medical malpractice case where the exposure was far in excess of the $1 million agreed upon limits, that was much more important than a common claim that we had to bring as a compulsory common claim because medical protective committed some bad faith actions as a result of its investigation. And when you weigh those two things as the court of appeals did in the farmer's case, there's no question that I think that the more important claim in this case, and, Your Honor, that's borne out by the fact that medical protective fought so hard after this judgment with prejudice was entered by filing their Rule 60 and Rule 59 motions. They clearly felt that we prevailed. Otherwise, why would they file those post-judgment motions to set aside the dismissal? That's the reason that we prevailed in the case. There's one more important thing that I think that I have to mention before I sit down, and that is Justice Scalia's decision in the Kekkonen case on the issue of the court retaining jurisdiction. And because the court retained jurisdiction in this case, pursuant to the order that was agreed upon by the parties, that retention of jurisdiction creates the judicial action that's necessary to sustain the test under Pekkonen and creates an exception to footnote 7 of Pekkonen, which medical protective has relied upon in its arguments. But Pekkonen does not apply here. It's Federal, not State. I believe that for the award of attorney's fees, Pekkonen does apply. It has to do with Federal fee-shifting statutes. Well, if that is the case, as stated in our ---- if that's the Court's position, in that case, then, we are clearly the prevailing party, because under Arizona law, the standard is even more relaxed for prevailing party than it is in Federal jurisdiction. Well, as you said, it's the totality of the litigation. That's correct. But we could have been the prevailing party on the dismissal without prejudice as well as a dismissal with prejudice in Arizona law. Okay. Thank you, Mr. Kasparov. Mr. Rogers. Thank you, Your Honors. I think it's important to point out, first of all, that the attorney's fees statute that we're talking about in Arizona is discretionary. It's the judge's discretion here to determine, to make these determinations on who's the prevailing party, the totality of the circumstances, which we keep talking about. Did the judge use the right standard? Yes, Your Honor. I think he did. Why is he citing Pekkonen? Again, as Mr. Kasparov said, in actuality, the Arizona courts talk about the successful and prevailing party in the same context. Are there any Arizona cases that cite Pekkonen? Not that I'm aware of, Your Honor. Then I'm sort of puzzled as to why it's relevant. The standard that's used, the successful party and the definition that's used there is essentially the same as prevailing party under the Federal law. We might find Pekkonen persuasive then in the same way that you could cite, let's say, a decision of the Texas Supreme Court. And that may be, Your Honor. I believe that you look at the successful party, and the closest analogous cases are in the Federal court under these circumstances. I cite to the Bridgeport case out of the Middle District of Tennessee, which is precisely these circumstances where you have a dismissal with prejudice, which was pursuant to a settlement agreement, and everything disappears. Is that under Arizona law? Again, no, Your Honor. It's not Arizona law. Okay. So it might be persuasive, but it doesn't have anything to do with, it doesn't say anything about the Arizona statute. Yes, Your Honor. The cases that I looked at from the Arizona courts have actually sort of studiously ignored anything out of Federal law unless it dealt with Arizona. So I'm really mystified why both sides keep referring to Pekkonen. It just doesn't seem relevant to me. It's a completely different jurisdiction. It's a different statute. It's a different statutory phrase. I mean, I don't get it. Well, again, Your Honor, I would say they do use the phrase interchangeably under Arizona law. But the fact is that what we're looking at here is the court evaluated whether he cited to Pekkonen or not and whether that's the appropriate standard, whether he was just using it as persuasive authority or not. Is there any place in the district court's opinion where it suggests that he has examined the totality of the circumstances? I do not think he uses that phrase, Your Honor. But he evaluates it. If you look at it, he evaluates the factual circumstances here. He looks at the totality of the circumstances. The totality of the circumstances are that pursuant to this settlement agreement, and this is the classic walk away. This isn't something where someone got something. The Barrios case that Mr. Kasparik referred to that Judge Tashima authored, that was a case where right within the settlement agreement they agreed to allow the court to maintain jurisdiction over the attorney's fees issue to determine who was the prevailing party. There was payment of monetary damages. There was a change in the policy. It was an ADA case. So all these things, the totality of the circumstances here, this is a walk away. Medical protective walks away from its claim. Dr. Pang walks away from his counterclaim. This is the de minimis situation. Otherwise, we're talking about a situation where there's always a successful party. Although at the end of the day, Dr. Pang has his increased coverage. You're defending him with the higher policy limits. And that looks like that's a pretty good result for him. Your Honor, the case here, the rescission case, would simply reduce the limits. The defense was happening no matter what, whether this case went forward or not. So the defense is irrelevant. That was happening under any circumstances. As far as the limits, that's what was in existence at the time. I mean, all they're walking, again, this is a walk away. They're exactly where they were when they started this case. Well, it's a walk away, you know, except for this. I mean, you're the plaintiff. You instituted the action to, you know, to deny coverage to some extent. And that obviously, you know, would have been injurious to the ongoing defense of the lawsuit against Dr. Pang. Now, and in the end, you gave up that claim. I mean, in other words, you agreed in effect that he would have full coverage. Now, isn't that or doesn't that make him a successful party on what your opponent calls a primary issue in this case? I don't believe so, Your Honor. Again, it's a situation where the defense was happening no matter what. This ruling didn't affect the defense in that case. Oh, but we're talking about, you know, how much coverage he had, right? Right. And he ended up getting a settlement within the original coverage. Well, that doesn't matter. That happened later. We're talking about going into the lawsuit how much coverage he has. And you filed this action saying, no, his coverage stops here. And you dismissed your case. You gave it up with prejudice. Doesn't that make him a successful party or a prevailing party? Again, Your Honor, I'd say there's no prevailing party because it's a wash. We give up the coverage claim. They give up the bad faith claim. And, again, they pursued the bad faith claim vigorously. It wasn't something that they just threw in, as they'd like to suggest. We had motions on these things that we actually successfully had the court issue a motion granting summary judgment on the punitive damages claim arising out of that bad faith claim. So the only substantive ruling from the court was actually a ruling in favor of medical protective, which gave them a summary judgment on the punitive damages claim arising out of the bad faith. So we can't just simply say they were the only one who got anything out of this. Again, this is a walkway. Each party is back in its original position, as if this never happened. And if this isn't a case where the court can just say there's no successful party, they just walked away from this case. Every case where there's a settlement, every case where parties walk away, there's the opportunity for attorney's fees and a prevailing party against the plaintiff every single time. Is there anything in the record that would help us understand what the $135,000 was, what that represented? That represented the – and I believe it's – there are e-mails, Your Honor, and I'm not sure if they're in the excerpts or not. Those e-mails indicate – it represented the attorney's fees, as Mr. Kasparov said. It was the attorney's fees in this case that Dr. Pang had expended at that time. But nothing in the settlement should have signaled to the district court that he's represented his attorney's fees in this case. No, and that portion of the settlement wasn't even in the order, Your Honor. And I don't know that the court was even informed of that amount at all. The – that aspect was, as Dr. Pang represents in his briefing, was a contingent part of this settlement. It wasn't all of the settlement, but it was a contingent part of it. If they successfully maintained the – affirmed the ruling on appeal in favor of Dr. Pang, then under those circumstances, Medical Protective agreed to basically pay the attorney's fees in this case to Dr. Pang. Because under those circumstances, Medical Protective wouldn't have had to pay anything in the indemnity of Dr. Pang, because he won at the trial court level. Instead, the ruling was reversed and came back. And at that point, Medical Protective would have been on the line for up to $5 million. Yes. Yes, Your Honor. And they settled it within the policy limits of the original $1 million. It was settled within that amount. But the $135 represented the attorney's fees in this case. And this shows, in my mind, Your Honor, that that was contemplated. The attorney's fees were contemplated at one point, but it was in – as part of that settlement, it was only part of – But you just told us you're not even sure the district court knew of that, and it wasn't in anything that the district court would have known. It wasn't – no. It was part of the settlement, but it wasn't part of what the district court was told. Again, the district court, all they – and the district court tells you what he did. He said, I did nothing other than rubber stamp this. I had no oversight. Contrary to the Barrios case, I think the Richard S. case that Mr. Kacperik cites too in his reply, those cases – the court maintained jurisdiction over the attorney's fees issue by agreement of the parties. Here, the court maintained no jurisdiction once this was dismissed. It just was self-executing dismissal of the case with prejudice. Both sides walk away. It's done. So this isn't a situation that required any oversight. Judge Steelberg said, I didn't have any involvement with this, and this wasn't a judicially sanctioned or reviewed or – it wasn't something, Your Honor, in those cases too that they could come back and enforce. It was simply, it's done. The case is over. So unless there are any further questions, I don't know. I don't think so. Thank you, Mr. Rogers. Mr. Kacperik, you reserve some time. Yes, Your Honor. Under Arizona law, for the court to make a determination as to whether or not attorney's fees should be awarded, there has to be an analysis under Wagon Seller slash Associated v. Warner. Judge Steelberg made no such analysis in this case, and we discussed that in our briefing papers. With respect to the issue of whether or not the attorney's fees were – the court was aware of the attorney's fees, the parties, as required under Rule 41, filed a joint motion for non-final order of dismissal without prejudice, and that's part of the record. And in that, it specifically says, in the event that the state court judgment in favor of Dr. Pang is affirmed, MPC will pay Dr. Pang a sum of money pursuant to the settlement, and the parties will file a motion requesting that the court sort of be modified into a final order of dismissal with prejudice. So Judge Steelberg was aware of the fact. He wasn't aware that it was $135,000, except that the e-mails – the e-mails were part of the motion for attorney's fees. In other words, when we move for attorney's fees, the e-mails by which $135,000 were mentioned were part of those – was part of those motion papers, and they're in the record. And so before the dismissal, Dr. – or excuse me, Judge Steelberg was aware that Medical Protective was going to pay money pursuant to this settlement, and then as part of the motion for attorney's fees, he was aware of the fact that the amount agreed upon was $135,000. But because the contingency failed, the settlement – that's my whole problem with what Judge Steelberg has ruled in this case. The contingency for the settlement failed, And so because of that, a material condition of the settlement failed. Dr. Pang didn't get his $135,000. Instead, he got a dismissal with prejudice, and that makes him the prevailing party that enables him to come back to this court on motion and ask for the attorney's fees because he's a prevailing party. That's – that's why I think our position makes sense. If the settlement had been – had the settlement not – had the contingency of the – of the jury verdict being affirmed been fulfilled, Dr. Pang would have received $135,000, the case would have been over at that point in time. But you negotiated all of this. Pardon me? But you negotiated all of this. We negotiated that. We didn't negotiate the dismiss. We – all we did was have a mechanism to reopen the case. But once the district court issued his order, everybody knew what the rules were. You knew that if you didn't – if you did nothing for 30 days, that it became – it became a dismissal with prejudice. I knew that. Medical protectors' position was they didn't know that, okay, because they filed a motion. They felt that the – that they were entitled to have that judgment set aside. I mean, I – again, I don't understand how they can claim that they have a prevailing party when they fought so hard to set aside the judgment. And they did. And that's the second part of our – the second part of our appeal, that we prevailed on those post-judgment motions and were entitled to those attorney's fees, even though they're relatively small, $10,000, but we're entitled to those. And Judge Tilburg ignored the Arizona Court of Appeals in the Lamb decision when he denied our right to the attorney's fees in the second motion. So I think it's fairly clear that we're the prevailing party, that we're entitled to both the attorney's fees on the – on the main case and we're entitled to the second. And I think that the only thing that's left for Judge Tilburg to do on remand by this Court is to – is to calculate – is to look at the fee bills and decide what amount in those fee bills is reasonable. I think that's the only thing that's left for the – for the trial court to do in this case. Okay. Thank you, Your Honor. And we thank both counsel for the argument. Codical Protective v. Pang is submitted.
judges: Wood, Tashima, Bybee